IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**FRAGEPANI BELL, #K5072**　　　　　　　　　　　　　　　　**PETITIONER**

**versus**　　　　　　　　　　　　　　　　　　　　　　**NO. 2:03cv354-MPM**

**MICHAEL A. WILSON, et al.**　　　　　　　　　　　　　　**RESPONDENTS**

### RESPONSE TO ORDER REQUESTING ADDITIONAL BRIEFING

**COME NOW** the Respondents in the above-styled and numbered cause and file their response to the Court's Order requesting additional briefing and would show unto the Court the following:

### I.

This cause is before the Court following remand by the United States Court of Appeals for the Fifth Circuit in Cause No. 04-60740, directing this Court to conduct further proceedings consistent with the Fifth Circuit's opinion which stated, in pertinent part, as follows:

> The case is REMANDED so that the district court can consider the substance of Bell's habeas claims that the prosecution violated *Brady*, he received ineffective assistance of counsel at trial, and the trial judge was biased.

*See* Cause No. 04-60740. This Court has now directed Respondents to file an additional brief to address those claims remanded by the Fifth Circuit Court of Appeals.

### II.

Respondents submit that the pertinent procedural history of this case is as listed below. On December 1, 2000, Bell was convicted of one count of sexual battery (Count One) and one

count of attempted sexual battery (Count Two) in the Circuit Court of Bolivar County, Mississippi.  **State Court Record, hereinafter S.C.R., Vol. 1, pg. 33.**  On December 15, 2000, Bell was sentenced to ten (10) years on each count to be served concurrently in the custody of the Mississippi Department of Corrections.  **S.C.R., Vol. 1, pp. 36-38.**  Thereafter, Bell appealed his convictions and sentences to the Mississippi Court of Appeals, which affirmed the convictions and sentences in a published opinion, attached to Respondents' original Answer as **Exhibit A**.  *Bell v. State*, 835 So. 2d 953 (Miss. App. 2003) (Cause No. 2001-KA-00274-COA).  After this decision, Bell filed a motion for post-conviction relief ("PCR") in the Mississippi Supreme Court, which was docketed as Cause No. 2003-M-01230.  Thereafter, Bell also filed a motion to amend his PCR.  On August 28, 2003, the Mississippi Court of Appeals denied Bell's PCR in an order attached to Respondents' original Answer as **Exhibit B**.

On September 24, 2003, Bell filed the instant petition for habeas corpus in this Court, the United States District Court for the Northern District of Mississippi, Delta Division.  On February 2, 2004, Respondents filed an Answer to Bell's petition in which Respondents argued that the three (3) claims remanded by the Fifth Circuit Court of Appeals that are now the subject of this brief were procedurally barred from habeas review under *Sones v. Hargett*, 61 F.3d 410 (5th Cir. 1995).  On July 21, 2004, this Court denied Bell's habeas petition.  On October 7, 2004, this Court denied Bell's request for a Certificate of Appealability ("COA").  On April 18, 2005, the Fifth Circuit granted a COA on the limited issue of whether the aforementioned three (3) issues had been properly exhausted by Bell.  The parties briefed this issue and on October 18, 2006, after considering the positions of both Bell and the State, the Fifth Circuit remanded the instant three (3) issues for consideration on the merits by this Court.  Thereafter, this Court

ordered the Respondents to submit additional briefing regarding the merits of these issues.

### III.

In the order remanding these issues, the Fifth Circuit held that each of the issues had been argued in Bell's PCR before the Mississippi Supreme Court. As stated above, the state supreme court denied that motion finding that Bell had failed to raise any identifiable issues. As a result, Respondents submit that under the Antiterrorism and Effective Death Penalty Act of 1996, because these issues were decided on the merits, habeas relief cannot be granted with respect to these claims. 28 U.S.C. § 2254(d) and §2254(e)(1). 28 U.S.C. §2254(d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The first exception, subsection (d)(1) applies to questions of law or to mixed questions of law and fact. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Respondents submit that each claim now before this Court is a mixed question of law and fact. Therefore, subsection (1) of § 2254(d) governs the claims and dictates that a federal court cannot grant habeas relief to the Petitioner unless it determines that the state court's decision involved an unreasonable application of the law to the facts. The "unreasonable application" standard of

3

review of a state court decision does not mean that a federal court may grant habeas relief based on its simple disagreement with the state court decision; this would amount to nothing more than *de novo* review. *See Williams v. Cain*, 125 F.3d 269, 276-77 (5th Cir. 1997). Unless there is such an unreasonable application, there exists a presumption that state court factual findings are correct. *Knox v. Johnson*, 224 F.3d 470 (5th Cir. 2000).

In *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the United States Supreme Court concluded that §2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court." *Id*. at 1523. A state court's decision is contrary to federal law if it arrives at a conclusion opposite that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Id*. at 1523. A state court's decision involves an unreasonable application of federal law if it identifies the correct governing principle but unreasonably (not only incorrectly) applies the principle to facts of the prisoner's case; this application of law to facts must be objectively unreasonable. *Id*. at 1521. Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. *See also Ramdass v. Angelone,* 530 U.S. 156, 120 S.Ct. 2113 (2000); *Chambers v. Johnson*, 218 F.3d 360 (5th Cir. 2000); *Hill v. Johnson*, 210 F.3d 481 (5th Cir. 2000).

Nevertheless, under § 2254(d)(2), grounds may still merit review if those facts to which the appellate courts applied the law were determined unreasonably in light of the evidence

presented. Because the state appellate courts are presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As will be discussed below, Bell failed to meet his burden. Accordingly, this Court is barred from reviewing issues already decided on the merits.

## IV.

Bell's first claim to be considered is whether the prosecution violated *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), by not producing the statement of Carolyn Brackin, an employee of the Department of Human Services. In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. Since the decision in *Brady*, the standard has evolved further:

> To establish a *Brady* claim, a habeas petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the petitioner, and (3) the evidence was material. *U.S. v. Ellender*, 947 F.2d 748, 756 (5th Cir. 1991) (citations omitted). In assessing the materiality of suppressed evidence, the Supreme Court explained that "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *U.S. v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id*., at 682, 105 S.Ct. at 3383. Recently, the Court further observed that a "reasonable probability" of a different result is shown when the non-disclosure "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Kyles v. Whitley*, 514 U.S. 419, ----, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (footnote omitted). "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id*. at ----, 115 S.Ct. at 1566. Finally, the materiality inquiry is applied to "the suppressed

5

evidence collectively, not item-by-item." *Id*. at ----, 115 S.Ct. at 1567. *Spence v. Johnson*, 80 F.3d 989, 994-995 (5th Cir. 1996) . The Fifth Circuit has taken the standard one step further and held that "'the materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State.'" *Id.* at 995 (citations omitted). The Fifth Circuit has also concluded that the *Brady* rule "applies only to impeachment and exculpatory evidence; neutral or inculpatory evidence lies outside its coverage." *U.S. v. Nixon*, 881 F.2d 1305, 1308 (1989). Finally, it should be noted that "the discovery of a *Brady* violation does not automatically entitle a defendant to a new trial." *Id*.

In this claim, Bell refers to a statement made by Brackin that at the time she interviewed F.M., one of the victims, she had some doubts regarding her story. According to Brackin, this was because she believed that F.M. disliked and resented Bell due to the time Bell had spent with F.M's mother and the fact that an ex-girlfriend of Bell's had argued with F.M.'s mother in front of the child. However, Respondents submit that Bell has defeated his own claim. In an exhibit to his habeas petition, Bell has attached the State's supplemental discovery disclosure, which can be found at **S.C.R., Vol. 1, pp. 19-20**. This report was provided to the defense on November 28, 2000, prior to trial, and clearly states at the bottom of the first page:

> 2. Carolyn Brackin - Dept. of Human Services - talked with the victims after the incident was reported. Had some doubts as to whether the allegations were true because she felt [F.M.] did not like defendant and resented him and the time he spent with her mother. [F.M] is aware that defendant had a previous girlfriend who used to come to their house and argue with her mother. She has seen or heard the arguments.

This disclosure report also states that the prosecution provided the defense with intake forms

from the Department of Human Services and the case reports and handwritten notes of Carolyn Brackin.

Therefore, Bell cannot satisfy the first prong of *Brady* – that the prosecution suppressed evidence. *Spence,* 80 F.3d at 994-995. As stated above, Bell has attached this discovery disclosure to his instant pleadings as well as to his state court PCR, which clearly shows that the prosecution provided the very information Bell complains of in a timely manner. As such, Respondents submit the state court's decision was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, this decision was not based on an unreasonable determination of the facts in light of the evidence. Therefore, Respondents submit that Bell should be denied habeas relief on this claim.

### V.

The next issue before this Court is whether the trial judge was biased. Specifically in his state court PCR, Bell argued that the trial judge conspired with both the defense attorney and the prosecution to withhold Brackin's testimony and that the judge concealed "all the information that would have resulted in a different verdict." However, there is absolutely no evidence in the record to indicate such a conspiracy on the part of the trial judge, and Bell has provided no evidence to that effect. In fact, as stated above, this evidence was not withheld, but was provided to defense counsel in a timely manner.[1] In addition, a review of the record indicates that the trial

---

[1] Further, Respondents note that, while Brackin was never called to testify, the substance of her statement – that F.M. had witnessed arguments between Bell and F.M.'s mother and between Bell's ex-girlfriend and F.M.'s mother and, for this reason, disliked Bell – was before the jury. On direct examination, Bell testified that F.M. witnessed an argument between himself and her mother. **S.C.R., Vol. 3, pg. 158.** Then, on cross-examination, Bell testified that there had been a claim that his wife [who

judge was fair and impartial. At no point in the trial transcript does the judge make any improper comments regarding Bell or his character. Further, the judge agreed to allow Bell to remain free on bail, albeit an increased amount of bail, pending sentencing, **S.C.R., Vol. 3, pg. 193**, and sentenced Bell to only ten (10) years on both counts when Bell was facing a possible maximum sentence of sixty (60) years, **S.C.R., Vol. 3, pp. 201-202.**

Respondents also submit that, in the argument provided in his state court PCR, Bell offered no evidence in support of his claim that the judge concealed "all the information that would have resulted in a different verdict," nor did he provide any evidence as to what information he was speaking of. The only argument Respondents could find in the instant habeas petition regarding this claim is in Ground Four where Bell states that the judge failed to protect Petitioner's rights during jury selection and at trial. Respondents submit that this claim is equally vague and conclusory as Bell has failed to specify what actions the judge took which represent bias. Such "mere conclusory allegations do not raise a constitutional issue in a habeas proceeding." *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) (citations omitted). However, Respondents would point out to the Court that during voir dire the jury was questioned extensively by the trial judge, prosecution and defense as is evidenced by the record. **S.C.R., Vol. 2, pp. 2-30.** Further, twelve (12) jurors were interviewed individually in chambers and the judge struck several jurors for cause. As such, Respondents submit that there is no merit to these claims. Therefore, the state court's decision was neither contrary to, nor did it involve an

---

is apparently the person referred to as Bell's ex-girlfriend by Brackin] had an altercation with F.M.'s mother and tried to run her over**. S.C.R., Vol. 3, pg. 164.** Thus, not only is there absolutely no evidence that this evidence was purposefully withheld, but it was actually before the jury, albeit in another form, at the time of their deliberations.

unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Additionally, this decision was not based on an unreasonable determination of the facts in light of the evidence. Thus, Respondents submit that Bell is not entitled to habeas relief on this claim.

## VI.

Finally, Respondents will address the four (4) ineffective assistance of counsel claims remanded by the Fifth Circuit. The U.S. Supreme Court has ruled that such claims are governed by the standard laid out in *Strickland v. Washington*, 466 U.S. 668 (1984). To merit habeas corpus relief on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-prong test set out in *Strickland* by demonstrating both constitutionally deficient performance by counsel and actual prejudice as a result of such ineffective assistance. *See also Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (summarizing the *Strickland* standard of review). A petitioner's failure to establish both prongs of the *Strickland* test warrants rejection of his claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986)(overruled on other grounds).

Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Judicial scrutiny of counsel's performance is highly deferential and must be considered in light of the services rendered at the time, rather than by a distorted view of 20/20 hindsight. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988). "Our scrutiny of counsel's performance is 'highly deferential' and we must make every effort 'to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

9

challenged conduct, and to evaluate the conduct of the counsel's perspective at the time.'" *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994). Counsel's services are not evaluated in a vacuum, and all circumstances are considered in determining whether the performance was reasonable under prevailing professional standards. *Lavernia*, 845 F.2d at 498. Finally, there is a strong presumption that counsel has exercised reasonable professional judgment. *Strickland*, 466 U.S. at 689; *Martin v. McCotter*, 796 F.2d 813, 187 (5th Cir. 1986).

To prove prejudice, petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir.), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997). To meet the prejudice prong, petitioner must affirmatively prove and not merely allege prejudice. *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5th Cir.), *cert. denied*, 476 U.S. 1143 (1986). There is no constitutional entitlement to error free representation. *Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981), *cert. denied*, 466 U.S. 949 (1982).

Counsel's performance is considered deficient if "it falls below an objective standard of reasonableness" as measured by professional norms. *Strickland*, 466 U.S. at 688. A determination must be made of whether there is a gap between what counsel actually did and what a reasonable attorney would have done under the circumstances. *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001). In other words, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). In scrutinizing counsel's performance, every effort must be made to "eliminate the distorting effects of hindsight," and deficiency should not

be assumed merely because the Court disagrees with trial counsels' strategy. *Id*. (citations omitted).

 First, Bell argues that trial counsel conspired with the trial judge and the prosecutor to withhold Carolyn Brackin's testimony. However, as discussed above, this information was not withheld, but was in defense counsel's possession prior to trial. As such, interpreted liberally, Bell is actually arguing that counsel should have called Brackin to the stand. "[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. U.S.*, 575 F.2d 515,521 (5th Cir. 1978).

 Further, despite the fact that Brackin did not testify, the information which Bell claims should have been presented to the jury – the possibility that F.M. was lying because she disliked Bell - was, in fact, presented. Trial counsel called a character witness, Emma Davis, to testify that both victims had poor reputations for the truth. **S.C.R., Vol. 3, pp. 148-150.** Bell then took the stand and testified that F.M. had witnessed an argument between himself and her mother, **S.C.R., Vol. 3, pg. 158**, and that she was also exposed to an altercation between Bell's wife and F.M.'s mother, **S.C.R., Vol. 3, pg. 164.** Most importantly, as shown above, defense counsel was in possession of Brackin's handwritten notes, official reports regarding her interviews with the victims and the DHS intake forms for the victims. Bell has offered no evidence that counsel failed to acquaint himself with this information. Thus, it is most likely that, after reviewing these documents, counsel found that calling Brackin as a witness would have done more harm than good. As such, Respondents submit that trial counsel's decision not to call Brackin to the stand was not unreasonable.

Bell also argues that trial counsel's performance was ineffective during jury selection. More specifically, Bell claims that counsel did not make adequate objections to the State's peremptory challenges, made no objections regarding possible *Batson* violations, and failed to make the race and gender of the jurors part of the record for *Batson* purposes. However, Respondents would note that trial counsel conducted an extensive voir dire, **S.C.R., Vol. 2, pp. 20-30**, and also conducted twelve (12) interviews of individual jurors in chambers, **S.C.R., Vol.2, pp. 32-61.** Further, trial counsel exercised five (5) peremptory strikes, **S.C.R., Vol. 2, pp. 63-66,** and objected at least four (4) times during the prosecution's voir dire. **S.C.R., Vol. 2, pg. 14-20.** As such, Respondents submit that the record reveals that trial counsel vigorously protected Bell's right to an impartial jury throughout the entire jury selection process.

More importantly, Bell has provided no evidence that objections to the State's peremptory strikes would have been warranted. *See Clark v. Collins*, 19 F. 3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering, it is the very opposite."). Likewise, there is absolutely no evidence in the record and Bell has provided no evidence to show that there was any need for an inquiry into the applicability of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In *Batson*, the United States Supreme Court held "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." *Id.* at 85. However, Respondents reiterate that Bell has offered no argument as to which specific jurors posed a *Batson* problem. As such, this claim is conclusory and is not appropriate for habeas relief. *Ross*, 694 F.2d at 1012.

Bell also complains that trial counsel failed to investigate the facts of the alleged crime

12

and provide a basic defense. "Certainly, an attorney cannot render reasonably effective assistance unless he has acquainted himself with the law and facts of the case." *Caraway v. Beto*, 421 F.2d 636 637-638 (5th Cir. 1970). However, Respondents submit there is nothing in the record to indicate that trial counsel failed to acquaint himself with the law and facts of the case. In fact, the record shows that counsel was well acquainted with both. Further, Bell has failed to elaborate on this claim and, as such, this argument is also conclusory. *Ross*, 694 F.2d at 1012.

Finally, Bell argues that the cumulative effect of his counsel's ineffectiveness deprived Bell of his constitutional rights. However, as stated above, Bell's claims of ineffective assistance are without merit and, errors that did not occur can have no cumulative effect. *See United States v. Moye,* 951 F.2d 59, 63 n. 7 (5th Cir.1992).

Based on the foregoing arguments, Respondents submit that Bell has failed to meet the deficiency prong of *Strickland, supra*. However, assuming *arguendo* that Bell showed counsel's performance to be deficient, which is denied, he has not proven the prejudice prong. To prove prejudice,[2] Petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. In *Strickland*, the Supreme Court explained that the defendant must make a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," (*Strickland*, 466 U.S. at 687) and demonstrate a reasonable probability

---

[2] The Supreme Court revisited the prejudice prong of the standard, explaining that the proper analysis focused not simply on outcome determination but whether the result of the proceeding was rendered fundamentally unfair or unreliable. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.ed2d 180, 189 (1993). *See also Mayabb v. Johnson, supra; Armstead v. Scott*, 37 F.ed 202-206-07 (5th Cir. 1994). This holding narrowed somewhat the scope of ineffective assistance of counsel doctrine, and it further limited the availability of habeas relief. *Armstead*, 37 .3d at 207; *U.S. v. Suarez*, 846 F. Supp. 892, 895 (D.C. Guam 1994); *see also Goodwin v. Johnson*, 132 F.3d 162,176 (5th Cir. 1997).

that but for counsel's errors, the results of the proceeding would have been different. *Id*. at 694. *See also Mayabb v. Johnson*, 168 F.3d 863,869 (5th Cir. 1998); *Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir, 1998). A "reasonable probability" is one sufficient to undermine confidence in the outcome of the proceeding. *Moawad v. Anderson, supra*. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Summit v. Blackburn*, 795 F.2d 1237,1242 (5th Cir. 1986). A habeas corpus petitioner must affirmatively plead this resulting prejudice. *Bridge v. Lynaugh*, 838 F.2d 770,773 (5th Cir. 1988). Further, Respondents submit that even if there were errors, which is denied, such were not "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. Bell has not shown "but for" counsel's alleged errors the proceedings would have been different. Accordingly, Respondents submit the state supreme court's finding that trial counsel was not ineffective under the *Strickland* test was neither contrary to nor an unreasonable application of clearly established federal law and therefore, habeas review should be denied with respect to these claims.

**WHEREFORE PREMISES CONSIDERED**, Respondents respectfully submit that the Bell's claims are without merit. Respondents further urge this Court to dismiss Bell's Petition for Writ of Habeas Corpus as requested in Respondents' original Answer, which is incorporated herein by reference. Respondents further respectfully ask the Court to deny Petitioner a certificate of appealability to appeal this matter to the United States Court of Appeals for the Fifth Circuit.

Respectfully submitted,

**JIM HOOD, ATTORNEY GENERAL
STATE OF MISSISSIPPI**

**PAULA H. BROOME
SPECIAL ASSISTANT ATTORNEY GENERAL**

**JERROLYN M. OWENS
SPECIAL ASSISTANT ATTORNEY GENERAL**

**LESLEY C. GUNN
SPECIAL ASSISTANT ATTORNEY GENERAL**


**BY:** /s/ Lesley C. Gunn
       MISS. BAR NO. 102131










**Office of the Attorney General
Post Office Box 220
Jackson, Mississippi 39205
Telephone: (601) 359-3680**

## CERTIFICATE OF SERVICE

This is to certify that **I, Lesley C. Gunn, Special Assistant Attorney General for the State of Mississippi**, have on this date, electronically filed the foregoing **Answer** with the Clerk of the Court using the ECF system which sent notification of such filing to the following: United States Magistrate Judge Michael P. Mills, and I hereby certify that I have, on this date, mailed via United States Postal Service, first-class postage prepaid, a true and correct copy of the foregoing **Answer** to the following:

>   Fragepani Bell, #K5072
>   Mississippi State Penitentiary
>   P.O. Box 1057
>   Unit 29, Bldg. F
>   Parchman, MS 38738

This, the 30th day of March, 2007.


**s/ LESLEY C. GUNN**


**Office of the Attorney General**
**Post Office Box 220**
**Jackson, Mississippi 39205**
**Telephone: (601) 359-3680**